## RELIANCE INSURANCE COMPANY v. OKLAHOMA GAS AND ELECTRIC COMPANY

74-186                                    517 S.W. 2d 499

Opinion delivered January 13, 1975

*Warner and Smith,* by: *Ben Paddock,* for appellant.

*Bryan & Fitzhugh,* for appellee.

J. FRED JONES, Justice. This is an appeal by Reliance Insurance Company from a circuit court judgment for $3,-

501.92 plus penalty and attorney's fee on a surety bond executed by Reliance in favor of the appellee Oklahoma Gas and Electric Company. Reliance contends on this appeal that the trial court erred, as a matter of law, in holding the surety liable under the bond for unpaid electric service furnished by the obligee to a trustee in bankruptcy and in entering a judgment based on such holding.

The facts as they appear in the record are as follows: J. P. O. Enterprises Corporation of Arkansas owned and operated several retail outlet stores in the Fort Smith area and obtained its electrical energy from the appellee Oklahoma Gas and Electric Company. Oklahoma Gas and Electric experienced some difficulty in collecting utility bills from J. P. O. and on October 27, 1972, demanded that J. P. O. furnish by November 15, 1972, a cash surety deposit or an equivalent surety bond to secure the payment for future electric service. Effective November 15, 1972, the appellant Reliance Insurance Company, as surety, and J. P. O., as principal, executed a surety bond in favor of the appellee Oklahoma Gas and Electric Company under the terms of which the surety agreed to pay up to the maximum of $5,500 to the obligee in the event, and to the extent, of the principal's failure to pay for service furnished to the principal by the obligee for the principal's operation of its stores. The bond contained a provision giving the surety the right of cancellation at any time upon 60 days prior written notice to obligee.

On January 3, 1973, the principal filed a petition in bankruptcy at which time it owed electric bills to Oklahoma Gas and Electric in the amount of $363.19 for unpaid electric service. On January 8, 1973, when the obligee, Oklahoma Gas and Electric, learned of the petition in bankruptcy, it demanded a cash deposit or new bond from the trustee in bankruptcy. [1] The trustee refused to make a cash deposit or obtain or execute a bond but according to Oklahoma Gas and Electric, he orally agreed to take care of electric bills under the continued operation of the stores by the trustee.

---

[1]The original bankruptcy petition was for arrangement under Chapter XI of the Federal Bankruptcy Act and a receiver was appointed. The same receiver was later appointed trustee under straight bankruptcy.

Oklahoma Gas and Electric continued to furnish electric service to the stores and on January 19, 1973, the appellant-surety, Reliance Insurance Company, exercised its right of cancellation by a written notice of cancellation effective as of that date or 60 days after receipt of the notice.

Under date of April 23, 1973, the assistant secretary and division auditor of Oklahoma Gas and Electric executed a "Proof of Claim in Bankruptcy" stating under oath that the bankrupt estate was justly indebted to the creditor Oklahoma Gas and Electric in the amount of $4,841.80, and stated that the creditor had furnished electrical energy to the bankrupt estate after the bankrupt filed its petition for arrangement under Chapter XI of the Federal Bankruptcy Act on January 3, 1973, and after appointment of trustee in straight bankruptcy. It stated that no part of the debt had been paid except $1,-000. The proof of claim then states as follows:

"That said creditor does not hold, and has not, nor has any person by its order, or to deponent's knowledge or belief, for its use, had or received any security or securities for said debts (or liability)."

A Photostat copy of this instrument appears in the record but the filing date is not shown thereon. It was dated April 23, 1973, and apparently when it was filed $1,000 had been paid on the account by the trustee in bankruptcy.

On March 22, 1973, the trustee in bankruptcy filed a petition in the bankruptcy court reporting his activities in the operation of the stores in winding up the business under straight bankruptcy. He alleged that several utility companies including Oklahoma Gas and Electric had threatened to discontinue utility service to the various stores for the non-payment of utility bills. He alleged that it was necessary for the referee in bankruptcy to enjoin the plaintiff from cutting off utilities in the stores and an injunction was prayed to that effect. On March 22, 1973, a temporary injunction was granted as prayed and notice was given to show cause why the injunction should not be made permanent.

In separate response to the show cause order Oklahoma

Gas and Electric prayed that the temporary restraining order be vacated or in the alternative that the trustee be required to furnish a cash deposit or surety bond securing the payment of utility bills. In connection with the response, Oklahoma Gas and Electric filed an affidavit dated March 29, 1973, in which it set out the difficulty it had had in collecting for electric service furnished to J. P. O., and setting out its original letter dated October 27, 1972, demanding that J. P. O. put up a cash deposit or bond. The affidavit then stated as follows:

"Affiant further states that in response to this letter JPO Enterprise Corporation of Arkansas furnished a surety bond to the Oklahoma Gas and Electric Company with the Reliance Insurance Company as surety. A copy of this bond is attached hereto, marked Exhibit B, and made a part hereof as though copied word for word.

Affiant further states that the said surety bond with the Reliance Insurance Company was by it canceled on January 3, 1973.

Affiant further states that on or about January 8, 1973, he received a notice that JPO Enterprise Corporation of Arkansas had filed a voluntary petition in bankruptcy and that Hugh W. Thistelthwaite as Receiver was appointed by the court to continue with the business operations of this debtor pending the filing of the plan arrangement therein. A copy of this notice is attached hereto, marked Exhibit C, and made a part hereof as though copied word for word.

Affiant further states that shortly after the receipt of this notice dated January 8, 1973, he telephoned Joe Lopez, Administrator for Receiver, and that Joe Lopez told him over the telephone that no change was to be made in the operation and the bills could be mailed to the same address and the trustee in bankruptcy would take care of the bills."

On June 11, 1973, Oklahoma Gas and Electric filed its complaint herein, alleging and setting out the execution of the bond as aforesaid, and alleging that the defendant in-

surance company attempted to cancel the bond as of January 19, 1973, but that under the terms of the bond, such cancellation did not become effective until 60 days after notice of cancellation or March 19, 1973. The complaint then alleged that J. P. O. owed the sum of $3,508.90 and prayed judgment for that amount together with penalty and attorney's fee.

Reliance Insurance Company filed its answer on February 5, 1973, in which it admitted liability to Oklahoma Gas and Electric for electric bills owed by J. P. O. Enterprises to January 3, 1973, on which date a receiver in bankruptcy was appointed for J. P. O. As affirmative defense it alleged that on January 3, 1973, J. P. O. filed its petition for reorganization under Chapter XI of the Federal Bankruptcy Act in United States District Court of Louisiana and on that date a receiver in bankruptcy was appointed for J. P. O. and served in that capacity until March 8, 1973, when he was appointed trustee in bankruptcy of the estate of J. P. O.; that from January 3, 1973, through April 10, 1973, and thereafter, said receiver or trustee was in charge of and managed the estate of J. P. O., and that Oklahoma Gas and Electric furnished electric service to said receiver and trustee and not to J. P. O. Reliance further alleged that the trustee in bankruptcy became liable for all bills incurred after January 3, 1973, and was liable on his official bond to Oklahoma Gas and Electric for electric service so furnished.

The case was tried before the trial judge sitting as a jury and the court found that as of January 3, 1973, when J. P. O. Enterprises was declared bankrupt, there was due and owing to Oklahoma Gas and Electric by J. P. O., the sum of $363.19 for electrical energy furnished to that date; that as of March 19, 1973, being 60 days after notice of cancellation of the bond, there was still due and owing to the plaintiff Oklahoma Gas and Electric the sum of $3,501, rather than the $3,508.90 as alleged in the original complaint. The court further found that Reliance Insurance Company had tendered the sum of $363.19 in full settlement of the amount it owed to Oklahoma Gas and Electric; that Oklahoma Gas and Electric had refused to accept said amount in satisfaction of the debt owing, and that Reliance Insurance Company had refused to pay the sum of $3,501.92 claimed by

Oklahoma Gas and Electric. The trial court then found that Oklahoma Gas and Electric was entitled to judgment against Reliance Insurance Company in the amount of $3,501.92, plus a 12% penalty and attorney's fee in the amount of $750, and rendered judgment against Reliance for a total of $4,-672.15, together with interest at six per cent per annum until paid.

We are of the opinion that the trial court erred in rendering judgment against Reliance Insurance Company for the amount of service furnished by Oklahoma Gas and Electric to the receiver and trustee in bankruptcy after January 3, 1973. The pertinent part of the bond reads in its entirety as follows:

"KNOW ALL MEN BY THESE PRESENTS:

That J. P. O. Enterprises Corporation of Arkansas, hereinafter called the PRINCIPAL, AND Reliance Insurance Company of Pennsylvania, hereinafter called the SURETY, are firmly bound unto OKLAHOMA GAS AND ELECTRIC COMPANY, 311 Lexington Avenue, Fort Smith, Arkansas, hereinafter called the OBLIGEE, in the sum of ($5,500.00) Five thousand, five hundred and no/100 — Dollars, for the payment whereof to the Obligee the Principal binds its heirs, executors, administrators, successors, and assigns, and the Surety binds itself, its administrators, successors and assigns, jointly and severally, firmly by these presents.

SIGNED, SEALED AND DATED this 15th day of November, 1972.

WHEREAS, the Principal has contracted for and shall receive from the Obligee ELECTRIC service at his business or establishment located at the following address: SEE RIDER ATTACHED.

* * *

NOW, THEREFORE, the conditions of the foregoing obligation are such that if the Principal shall promptly pay for such service upon the respective dates when payment therefor becomes due then this obligation shall be

void; otherwise to remain in full force and effect.

The following conditions are hereby made a part of this bond:

1.   The aggregate liability of the Surety for all or any defaults of the Principal hereunder shall not exceed the penal sum of the bond.

2.   No extension of time for payment and no waiver of any default by Principal nor any failure to give notice to Surety of nonpayment shall operate to relieve Surety of liability for service rendered while this bond is effective.

3.   This bond may be canceled by the Surety at any time by giving sixty (60) days prior written notice to the Obligee but no such cancellation shall relieve Surety of liability for payment for services rendered prior to the effective date of such cancellation."

The appellee recites the above wording in the bond with emphasis as follows:

"for the payment whereof to the Obligee the Principal binds *its heirs, executors, administrators, successors, and assigns,* and the Surety binds itself, its administrators, successors, and assigns, *jointly and severally, firmly by these presents.*"

The appellee then points out that the Bankruptcy Act in 11 USC 34 provides that "liability of a person who is a co-debtor with, or grantor or in any manner a surety for, a bankrupt shall not be altered by the discharge of such bankrupt," and the appellee argues that the bond by its express provision binds the successors of the principal which would include a receiver and trustee in bankruptcy.

We do not agree with the appellee in its interpretation of the provision of the bond. The obligee in the case at bar was Oklahoma Gas and Electric Company who had furnished the electric service to the principal J. P. O. The principal did bind its heirs, executors, administrators, successors and

assigns to pay the amount it owed to the obligee Oklahoma Gas and Electric, but Reliance Insurance Company was not an heir, executor, administrator, successor or assign of the principal J. P. O. The same applies to the surety, Reliance Insurance Company. It had no administrators, successors or assigns involved in this case, but if Reliance Insurance Company should have had administrators, successors and assigns, they would have been jointly and severally obligated under the bond to the same extent Reliance was obligated, and they would have been jointly and severally liable to Oklahoma Gas and Electric to the same extent Reliable would have been liable.

As we interpret the provision of the bond, only the principal and the surety were firmly bound unto the Oklahoma Gas and Electric Company. The principal bound its heirs, executors, administrators, successors and assigns for the obligation incurred and so did Reliance do likewise, but Reliance did not obligate itself for defaults occurring on indebtedness incurred by the principal's heirs, executors, administrators, successors and assigns. In other words, J. P. O. Enterprises agreed to pay for the electric service furnished to it by Oklahoma Gas and Electric. It further agreed that its heirs, executors, administrators, and assigns would be liable and would pay for the electric service so acquired and used by it. Reliance agreed to pay for the electric service furnished by Oklahoma Gas and Electric to J. P. O. Enterprises and used by it in the event J. P. O. or its heirs, executors, administrators or assigns failed to do so and Reliance agreed that its heirs, executors, administrators and assigns would be bound in carrying out its obligation.

There is no question that Oklahoma Gas and Electric is entitled to pay for its energy sold and delivered in connection with the operation of the businesses in this case. There is no question that J. P. O. Enterprises Corporation of Arkansas obligated itself as well as its heirs, executors, administrators, successors and assigns to pay the obligee Oklahoma Gas and Electric for electric service the principal J. P. O. contracted for and received from the obligee for electric service at its businesses located as set out in the rider attached. There is no question that Reliance Insurance Company obligated itself as

well as its administrators, successors and assigns jointly and severally to guarantee the payment for services the principal contracted for and received from the obligee at such establishments. But, the fact of the matter is, J. P. O. did not contract for and receive the electric service furnished to the trustee in bankruptcy at said locations after January 3, 1973.

It is abundantly clear from the affidavit filed in the bankruptcy court on behalf of Oklahoma Gas and Electric that it considered the obligation of J. P. O. Enterprises as well as Reliance Insurance Company's obligation at an end as of January 3, 1973, and that it only continued service to the trustee in bankruptcy because it felt that it was prohibited from doing otherwise under rules and regulations of the Public Utility Department of the state, and because of an injunction against it as well as against other utility companies under order of the referee in bankruptcy.

The appellee relies on the case of *People* v. *United States Fidelity & Guaranty Co.*, 114 P. Rpt. 2d p. 389, where a district court in California held a surety liable on a bond for the payment of excise tax on beer sold after the principal had gone into bankruptcy and a receiver had been appointed. The appellee points out that in that case, the surety was held liable for the payment of taxes on beer sold by the receiver after his appointment, and the surety's argument that its obligation under the bond terminated upon the appointment of the receiver was rejected. The *People* case might be good precedent for the surety's liability in the case at bar for electric service furnished to the date of bankruptcy, but the surety admits that liability in the case at bar. In the *People* case the beer involved had already been manufactured when the principal went into bankruptcy and the receiver was appointed. The bond in the *People* case was given for the express purpose of insuring the payment of excise tax. The distinguishing feature in that case is set forth in the first sentence of that part of the decision quoted by the appellee as follows:

> " 'It is appellant's theory that the license of the Bailey Brewing Company to manufacture and sell beer, or the right to exercise that license, terminated with the appointment of the receiver, with the result that the beer

was not sold under the license, so that the tax was not due either from the brewing company or its surety.' "

In light of our interpretation of the bond provision as above set out, we deem it unnecessary to prolong this opinion by analyzing the other cases relied on by the appellee, but in none of them was a surety held liable under an obligation to its principal for services performed, continued or rendered under a new and separate agreement with, and to, a trustee in bankruptcy in the continuation and winding up of the original principal's business.

The appellant has cited several cases where liability on surety bonds, with corporations as principals, was held terminated upon consolidation and mergers of the principals with other corporations. We are of the opinion, however, that in the case at bar Reliance Insurance Company only obligated itself to pay Oklahoma Gas and Electric for such utility service it furnished to J. P. O. Enterprises under its contract, and did not obligate itself for default in payment by the trustee in bankruptcy for service furnished the trustee under a new agreement or for service continued under orders of a referee in bankruptcy.

The judgment is affirmed as to the $363.19 for service furnished to J. P. O. Enterprises Corporation but is reversed as to penalty and attorney's fee and the $3,501.91 for service furnished to the trustee in bankruptcy.

Affirmed in part; reversed in part.